## Richmond

### WILLIAM NICHOLAS LINCOLN v. COMMONWEALTH OF VIRGINIA.

October 8, 1976.

Record No. 751382.

Present, All the Justices.

*Ronald W. Denney; Humes J. Franklin, Jr. (Franklin and Franklin, on brief), for plaintiff in error.*

*Jim L. Chin, Assistant Attorney General (Andrew P. Miller, Attorney General, on brief), for defendant in error.*

Harman, J., delivered the opinion of the court.

William Nicholas Lincoln (Lincoln or defendant) was convicted by a jury of the armed robbery of J. B. Armistead. The jury's verdict fixed his punishment at 10 years in the penitentiary. Lincoln appeals from a final order of the trial court sentencing him on this verdict.

We granted a writ of error limited to Lincoln's claim that the trial court erred in:

(1) permitting the Commonwealth's Attorney, in his final argument, to comment on Lincoln's failure to testify; and

(2) refusing to grant Instruction I dealing with the credibility of convicted felons.

During the early morning hours of February 1, 1975, three masked men, two of whom were armed with shotguns, robbed J. B. Armistead and four other men engaged in an illegal dice game in Albemarle County. The defendant was identified as one of the robbers by the testimony of Glenn Showalter and James Showalter (the Showalters), who had previously entered guilty pleas and stood convicted, but not sentenced, for participating in the robbery.

None of the dice players was able to identify the masked robbers. However, testimony from Armistead and another player, Spradlin, relating the circumstances of the robbery, corroborated the testimony of the Showalters as to many of those circumstances.

The defendant did not testify. The only evidence which he produced was the testimony of nine witnesses who vouched for his good character.

At the defendant's request the trial court, in its instructions to the jury, told the jurors that it was ". . . the right and privilege of the accused to testify or not to testify and [his] failure [to testify] creates no presumption against him and his failure to testify is not a circumstance which the jury should consider when arriving at its verdict."

In his closing argument, defendant's counsel, in commenting on and attempting to explain the defendant's failure to testify, said:

". . . Now, the defendant didn't take the stand and the court, of course, has already instructed you on it, that it's the right and privilege of this defendant to testify or not to testify. He's not the one that has to prove this case here today. He doesn't have to prove a thing to you gentlemen. It's the Commonwealth that has to prove it. The defendant didn't take the stand, we don't feel that you gentlemen of the jury are going to convict this man based on the evidence of two convicted felons, who had already been charged in the thing and obviously looking around to get others involved to save their own skin . . .

". . . The other instruction that I alluded to earlier, Bill Lincoln has the right to testify or not to testify *and we didn't think it was necessary in this case* . . ." (emphasis provided)

Prior to his final argument, the Commonwealth's Attorney, out of the presence of the jury, advised the court and defense counsel that he intended, unless otherwise directed by the court, to take issue with the quoted portion of the defendant's argument by commenting on the failure of the defendant to testify. Over objection, and with an admonition by the trial court not to go beyond meeting the defendant's argument, the Commonwealth's Attorney, in recalling and discussing the argument made by the defense, said:

". . . actually the physical descriptions and the number of men who entered and how they entered as told by Showalter exactly tallies with the testimony of Armistead and Spradlin. Remember the big man who hit the door first. Look at the defendant, the big man. He then goes on to say that it wasn't necessary for the defendant to take the stand. Then he said how serious a crime this is and the defendant did not take the stand and deny it. Now, he put on many character witnesses to testify for the defendant, [but] not one witness to deny anything the Showalters said, Armistead said, Spradlin said and then he went on to compare the seriousness of gambling with armed robbery . . ."

The defendant argues that this reference to his failure to testify was in violation of his right against self-incrimination under the Fifth Amendment to the United States Constitution and Article 1 of Section VIII of the Virginia Constitution. He also points out that such comment by the Commonwealth's Attorney is proscribed by Code § 19.2-268.[1] In support of this argument the defendant relies principally on *Griffin* v. *California*, 380 U.S. 609 (1965), *Elliott* v. *Commonwealth*, 172 Va. 595, 1 S.E.2d 273 (1939), and *Banovitch* v. *Commonwealth*, 196 Va. 210, 83 S.E.2d 369 (1954).

---

[1] Code § 19.2-268 provides: — "In any case of felony or misdemeanor, the accused may be sworn and examined in his own behalf, and if so sworn and examined, he shall be deemed to have waived his privilege of not giving evidence against himself, and shall be subject to cross-examination as any other witness; but his failure to testify shall create no presumption against him, nor be the subject of any comment before the court or jury by the prosecuting attorney."

*Griffin, Elliott* and *Banovitch* all stand for the proposition that it is generally error for the prosecutor to comment on the defendant's failure to testify. Such comment, however, may become proper under the invited error doctrine when the area has been opened to fair comment by the argument and comment of defense counsel or of a *pro se* defendant. *United States* v. *Hephner*, 410 F.2d 930, 935 (7th Cir. 1969); *United States ex rel. Miller* v. *Follette*, 397 F.2d 363 (2nd Cir. 1968), *cert. denied*, 393 U.S. 1039 (1969); *Babb* v. *United States*, 351 F.2d 863, 867-868 (8th Cir. 1965); *Adair* v. *State*, 51 Ala. App. 651, 653, 288 So.2d 187, 190 (1973); *People* v. *Burns*, 270 Cal. App.2d 238, 247, 75 Cal. Rptr. 688, 693 (1969); *People* v. *Boyden*, 251 Cal. App. 2d 798, 800, 60 Cal. Rptr. 271, 272 (1967); *People* v. *Davenport*, 240 Cal. App. 2d 341, 346-7, 49 Cal. Rptr. 575, 578-579 (1966); *Kurtz* v. *People*, 494 P.2d 97, 106 (Colo. 1972); *People* v. *Carruthers*, 18 Ill. App.3d 255, 266-7, 309 N.E.2d 659, 668 (1974); *State* v. *Sage*, 162 N.W.2d 502, 504 (Iowa 1968); *State* v. *Ergenbright*, 84 N.M. 662, 665, 506 P.2d 1209, 1212 (1973); *State* v. *Paris*, 76 N.M. 291, 299, 414 P.2d 512, 518 (1966); *Gaddis* v. *State*, 447 P.2d 42, 48 (Okla. Cr. 1968); *Tilford* v. *State*, 437 P.2d 261, 267 (Okla. Cr. 1967); *cf., People* v. *Stout*, 57 Cal. Rptr. 152, 424 P.2d 704 (1967); *contra, State* v. *Smith*, 101 Ariz. 407, 420 P.2d 278 (1966); *Commonwealth* v. *Scott*, 123 Mass. 239, 25 Am. R. 87 (1877); *State* v. *Davis*, 45 N.J. 195, 212 A.2d 19 (1965). Even though a defendant does not testify, demonstrative conduct on his part in some circumstances may open the door to fair comment on his failure to testify. *United States* v. *Yeager*, 285 F. Supp. 780, 783 (D.N.J. 1968).

Here, at the defendant's request, the jury was instructed that the defendant was not required to testify and that this failure created no presumption against him. Defendant's counsel, in his summation, represented to the jury that the defendant did not testify because "we don't feel . . . the jury are going to convict . . . on the evidence of two convicted felons" and because "we didn't think it was necessary." By so doing, the defense invited the prosecution's response, which did not go beyond meeting the argument advanced by the defendant. In these circumstances the response was fully justified and did not constitute error.

■ Now we shall consider the defendant's claim that the trial court erred in refusing to grant his tendered Instruction I, which reads as follows:

"The testimony of a witness may be discredited or impeached by showing that the witness has been convicted of a felony, that is, of a crime punishable by imprisonment for a term of years. Prior conviction does not render a witness incompetent to testify, but is merely a circumstance which you may consider in determining the credibility of a witness. It is the province of the jury to determine the weight to be given to any prior conviction as impeachment."

Code § 19.2-269 provides:

"A person convicted of a felony or perjury shall not be incompetent to testify, but the fact of such conviction may be shown in evidence to affect his credit."

Prior to the adoption of this statute as § 4779 of the Code of 1919, convicted felons, as a rule, could not testify unless pardoned or punished, and a person convicted of perjury could not testify although pardoned or punished. *Epes' Adm'r* v. *Hardaway*, 135 Va. 80, 87, 115 S.E. 712, 715 (1923). After adoption of this statute it has become well settled in Virginia that the character of a witness for veracity cannot be impeached by proof of a prior conviction of crime unless the crime be a felony, or one which involved moral turpitude or the character of the witness for veracity. *McLane* v. *Commonwealth*, 202 Va. 197, 203, 116 S.E.2d 274, 279-280 (1960).

When we look to the other instructions given by the court, we find that three of these instructions, namely Instructions I, D and M,[2] fully and fairly instructed the jury on the principles of law to be followed by the jury in weighing the evidence and determining the credibility of the witnesses who testified. In view of the other evidence corroborating the testimony of the Showalters, the trial court would not have erred in refusing Instruction M. *Dillard* v. *Commonwealth*, 216 Va. 820, 224 S.E.2d 137 (1976).

---

[2] Instruction I.
"The Court instructs the jury that they are the sole judges of the weight and credibility of evidence and the jury has the right to discard or accept the testimony or any part thereof of any witness, which the jury regards proper to discard or accept when considered in connection with the whole evidence of the case. In determining the credibility of the witnesses, and the weight to be given their testimony, the jury may consider the interest of the witness in the thing about which he testifies, his means of knowledge, bias, and prejudices in regard to the thing about which he testifies, and his demeanor while testifying."

Evidence was adduced that the Showalters were convicted felons because of their participation in the robbery. The defense, under the instructions granted, vigorously attacked the credibility of the Showalters on the grounds that they were unworthy of belief because they were both accomplices and convicted felons. While Instruction I was a correct statement of the legal principles involved and the trial court, in its discretion, could properly have given the instruction, it does not follow that it was reversible error to refuse it. Here the other instructions fully and fairly covered principles of law to be followed in weighing the evidence and determining the credibility of the witnesses, so we hold that the court did not err in refusing to grant Instruction I. *Asbury* v. *Commonwealth,* 211 Va. 101, 107, 175 S.E.2d 239, 243 (1970).

*Affirmed.*

---

Instruction D.

"The Court instructs the jury that they are the sole judges of the evidence and that they may believe or refuse to believe any witness, and that when passing upon the credibility of any witness they may take into consideration his interest in the matter in controversy, the reasonableness of his statement, his bias or prejudice in the matter, if any, his manner of testifying and his opportunity for knowing the truth, and all other surrounding circumstances appearing during the trial."

Instruction M.

"The testimony of an accomplice in crime, that is a person who actually commits or participates in a crime, is admissible in evidence, yet the evidence of an accomplice in crime, when not corroborated or confirmed by some person or persons not implicated in the crime, as to matters material to the issue, that is matters connecting the defendant with the commission of the crime as charged against him ought to be received with great caution by the jury before they should convict on such testimony. While the uncorroborated testimony of an accomplice should be received with great care and caution by the jury, nevertheless, if the jury are satisfied from the evidence of the guilt of the defendant beyond a reasonable doubt they may convict him upon the uncorroborated testimony of a single accomplice."