**Salem**

RUBEN TRAVIS FIELDS

v.

COMMONWEALTH OF VIRGINIA

No. 0783-86

Decided October 20, 1987

COUNSEL

David L. Scyphers (Johnson, Scyphers & Austin, P.C., on brief), for appellant.

W. Mark Dunn, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

DUFF, J. — Ruben Travis Fields (appellant) was convicted by a jury of two counts of grand larceny and two counts of breaking and entering, in violation of Code §§ 18.2-95 and 18.2-91. His appeal raises three issues: (1) whether the trial court erred in refusing an instruction regarding the effect of prior felony convictions on a witness' credibility; (2) whether the trial court erred in refusing to allow the appellant to testify about a conversation with his alleged accomplice; and (3) whether the evidence was sufficient to support one of his two convictions of breaking and entering.

We find that the trial court erred in refusing Instruction 9 dealing with the credibility of a convicted felon and reverse and remand for a new trial. We also find that the trial court did not err in limiting the appellant's testimony. We do not address the merits of the third issue because it was not properly preserved for appellate review.

The record reveals that the appellant and his brother, Trampis Fields, were charged with statutory burglary and grand larceny committed on November 6, 1985, at the homes of Sam and Margaret Salyer and Jerris Bailey. They elected to be tried together. The Commonwealth's evidence consisted mainly of the tes-

timony of an alleged accomplice, Timothy Fields, the appellant's first cousin. Prior to trial, Timothy pled guilty to two of four charges for his participation in the Bailey and Salyer burglaries.

At trial, Timothy testified that on November 6, 1985, the appellant, Trampis and he were driving on Route 611 when the appellant suggested that they "hit" a small building later identified as the Bailey residence. The appellant got out of the car and told them to come back and pick him up. Pursuant to these instructions, the two drove down the road, turned the car around and then proceeded back to the house. They saw the appellant at the side of the road with an armload of fishing poles and various tools, which were then placed in the trunk of the car.

Timothy testified that approximately thirty minutes after the Bailey burglary, they drove to the Salyer residence at Toole's Creek where the appellant got out of the car, knocked on the door, and the door opened by itself. The appellant called out to see if anyone was home, but no one responded. He then returned to the car and the three drove up the road. The appellant stated that he wanted to go back and "hit the place." They argued briefly and then went back to drop the appellant off. Later, Timothy saw the appellant come out of the Salyer's yard carrying various items, including three guns and a chainsaw. Trampis helped the appellant load the car, and the three then drove to Russell County where they put the stolen objects in a large groundhog hole under a church.

Timothy further testified that he and Trampis went to retrieve the property the following day. He sold part of it to his father and gave the appellant thirty dollars. Timothy stated that he turned himself in several days later after he learned that Trampis had been arrested and that the police were looking for him.

At the close of his testimony, Timothy testified as follows:

Q. On the four charges you were originally charged with, how many did you plead guilty to?

A. Two.

The Commonwealth's evidence also included a statement made by Trampis, on November 14, 1985, prior to trial, which corroborated Timothy's testimony. After it was read to the jury, the court gave a cautionary instruction that the statement was to be considered only against Trampis and not as evidence in determining appellant's guilt or innocence.

During the appellant's case-in-chief, Trampis recanted his statement and denied the appellant's involvement in the burglaries. He stated that Timothy perpetrated the crimes while he waited in the car. The appellant also denied participation in the burglaries and presented several alibi witnesses who stated that they either saw and/or talked to the appellant at the time of the offenses.

At the conclusion of the evidence, the appellant requested that the court grant Instruction 9, regarding the effect of a prior felony conviction on a witness' credibility.[1] The court denied the instruction on the ground that it was not supported by the evidence. This ruling was made after the court granted Instruction 10, dealing with the effect of a prior felony conviction on the appellant's credibility.[2]

## I.

The appellant argues that the trial court erred in refusing Instruction 9. In response, the Commonwealth argues that the instruction was properly refused because there was no evidence that Timothy had been convicted of a felony. It asserts that the only evidence offered was Timothy's testimony that he had pled guilty to two of four unspecified charges and that this was insufficient to support the instruction. The Commonwealth also contends that the principle of law in Instruction 9 was fully covered by the other instructions tendered by the court. We disagree with the Commonwealth's contentions and find that the trial court erred in its ruling.

---

[1] Instruction 9 stated the following: "You may consider proof of the witness's prior conviction of a felony as affecting his credibility but it does not render him incompetent to testify."

[2] Instruction 10 set forth the following: "You may consider proof of the defendant's prior conviction of a felony as affecting his credibility, but it does not render him incompetent to testify, nor shall you consider it as evidence of his guilt of the offense for which he is on trial, nor shall you consider it in fixing punishment if you do find him guilty."

Our first inquiry is whether Timothy had the status of a convicted felon at the time of his testimony. The record reveals that at the beginning of the trial, the jury was advised that the appellant and Trampis were being tried on four felony counts of breaking and entering and of grand larceny. At the close of Timothy's testimony, he was questioned about the four charges, and he stated that he pled guilty to two of them. Although the word "felony" was not used in the question posed to Timothy, it is clear from the record that his guilty plea related to two of the four felonies that he had been charged with for his joint participation in the crimes.

The Commonwealth argues that Timothy had not been convicted of the two felonies because, at the time of his testimony, the court had not yet imposed its sentence. The Commonwealth relies on *Smith v. Commonwealth*, 134 Va. 589, 113 S.E. 707 (1922), in support of its position. The issue in *Smith* was whether the word *convicted* in Code § 24.1-79.3[3] meant simply a finding of guilt by the jury, or whether it required, in addition to the verdict, a final judgment of conviction by the trial court. At the time of this decision, the statute provided as follows: "[T]he circuit courts of counties . . . shall have the power to remove from office all State, or county . . . officers elected or appointed . . . who shall have been convicted of a violation of any penal statute involving moral turpitude." The defendant had been found guilty in federal court of violating the "white slave act." While his case was under advisement, the state attempted to remove him from office, pursuant to the statute. The Virginia Supreme Court held that he could not be removed from office because he had not yet been convicted of a penal statute involving moral turpitude. The court defined the word "convicted" as a verdict of guilty *and* a judgment of conviction by the court. *Id.* at 593, 113 S.E. at 709.

We find that *Smith* should be limited to its own facts. Virginia courts have defined the word "convicted" in accordance with *Smith*, but only in the context of a defendant who has been confronted with some type of forfeiture. *See Prudential Insurance Co. v. Tull*, 524 F. Supp. 166, 170 (E.D. Va. 1981) (where the defendant was subject to a bar to the receipt of insurance proceeds, the Court held that she was not convicted within the mean-

---

[3]  § 24.1-79.3 was formerly Code § 2705 (1919).

ing of Code § 64.1-18 when she had been found guilty of murder by a jury and her petition for writ of error was pending in the Virginia Supreme Court); *White's Case*, 79 Va. 611, 616 (1884) (where the Court held that the defendant was not convicted of a first offense within the meaning of a statute providing for an enhanced penalty for a second offense when he had been found guilty of operating as a merchant without a license and his case was pending on appeal).

We find that *Lincoln v. Commonwealth*, 217 Va. 370, 228 S.E.2d 688 (1976), controls our inquiry regarding Timothy's status at the appellant's trial. The issue in *Lincoln* was whether the trial court erred in refusing an instruction regarding the credibility of convicted felons. At trial, two accomplices in a robbery testified against the defendant. In describing the facts of the case, the Court stated that they had *"previously entered guilty pleas and stood convicted, but not sentenced,* for participating in the robbery." *Id.* at 371, 228 S.E.2d at 689 (emphasis added). The Court found that the instruction was supported by the evidence, but that it was not error to refuse it because it was covered by other instructions. *Id.* at 375, 228 S.E.2d at 692.

■ In the present case, Timothy entered voluntary guilty pleas to two felonies, which were accepted by the trial court. Accordingly, we hold that for purposes of impeachment, he had the status of a convicted felon when he testified and Instruction 9 was supported by the evidence.

Next, we address the Commonwealth's contention that the other instructions tendered by the court, namely, Instruction A[4] and Instructions 1[5] and 10,[6] fully covered the principle of law con-

---

[4] Instruction A provided: "The Court instructs the jury that Timothy Fields has testified that he was an accomplice in the commission of the crime charged in the incident. While you may find your verdict upon his uncorroborated testimony, you should consider such testimony with great care and you are cautioned as to the danger of convicting the defendant upon the uncorroborated testimony of an accomplice. Nevertheless, if you are satisfied from the evidence of the guilt of the defendant beyond a reasonable doubt, you may convict the defendant on the uncorroborated testimony of a single accomplice."

[5] Instruction 1 read: "You are the judge of the facts, the credibility of the witnesses and the weight of the evidence. You may consider the appearance and manner of the witnesses on the stand, their intelligence, their opportunity for knowing the truth and for having observed the things about which they testified, their interest in the outcome of the case, their bias, and, if any have been shown, their prior inconsistent statements. While you have no right to arbitrarily disregard believable testimony of any witness, you do have a right to

tained in Instruction 9 and, therefore, the court did not err in refusing it. Although the court in *Lincoln* found that no error was committed in refusing an instruction similar to Instruction 9, different facts and procedures in the present case compel a holding that failure to give the instruction was error.

In *Lincoln*, the defendant did not testify and, therefore, no instruction was given regarding his credibility. However, in the present case, the court gave an instruction regarding the appellant's prior conviction but refused the same type instruction as it applied to Timothy's prior convictions. Timothy presented the only testimony[7] that directly implicated the appellant in the burglaries. In view of the fact that this evidence was in direct conflict with the appellant's testimony, we find that it was error to instruct the jury that they could consider appellant's prior conviction as affecting his credibility while refusing to similarly instruct them regarding the effect of Timothy's prior convictions on his credibility. In effect, the court instructed the jury that the law permitted them to discredit the appellant's alibi defense because of his prior conviction, but that no similar provision of law permitted them to consider a witness's prior felony conviction to discredit his incriminating statement.

Accordingly, we hold that the other instructions did not fully address the principle of law permitting the impeachment of a witness based on his prior felony conviction. Therefore, we find that the trial court erred in refusing Instruction 9.

---

discard or accept in whole or in part the testimony of any witness which you think is proper to discard or accept when you consider it in connection with other evidence in the case. You are entitled to use your common sense in judging any testimony. From these things and all the other circumstances of the case, you may determine which witnesses are more believable and weigh their testimony accordingly."

[6] Instruction 10 stated: "You may consider proof of the defendant's prior conviction of a felony as affecting his credibility, but it does not render him incompetent to testify, nor shall you consider it as evidence of his guilt of the offense for which he is on trial, nor shall you consider it in fixing punishment if you do find him guilty."

[7] The Commonwealth introduced Trampis Fields' pretrial statement that implicated the appellant in the crimes; however, at trial, Trampis testified that the appellant did not participate in the burglaries.

## II.

The appellant also argues that the trial court erred in refusing to allow him to testify about a conversation with Timothy Fields. He contends that the testimony was proper because it was offered to impeach Timothy's credibility by showing that he was influenced by the Commonwealth's offer of leniency. In response, the Commonwealth contends that the issue should not be addressed because the appellant failed to make a proffer of the excluded testimony.

The law is well established that an appellate court "will not consider an error assigned to the rejection of testimony unless such testimony has been given in the absence of the jury and made a part of the record in the manner prescribed by the Rules of Court." *Whittaker v. Commonwealth*, 217 Va. 966, 969, 234 S.E.2d 79, 81 (1977); *see also Barrett v. Commonwealth*, 231 Va. 102, 108, 341 S.E.2d 190, 194 (1986); *Wyche v. Commonwealth*, 218 Va. 839, 842-43, 241 S.E.2d 772, 774-75 (1978).

Based upon our review of the record, we find that the appellant failed to make a proffer of the rejected testimony and, therefore, we are unable to adjudicate the propriety of the trial court's ruling.

## III.

Finally, the appellant argues that the evidence was insufficient to support his conviction for statutory burglary at the Salyer residence. In response, the Commonwealth argues that the issue should not be addressed because it was not properly preserved for appellate review.

In *White v. Commonwealth*, 3 Va. App. 231, 234, 348 S.E.2d 866, 868 (1986), we held that a defendant is barred on appeal from challenging the sufficiency of the evidence when he fails to renew his motion to strike the evidence after presenting his case, unless the record demonstrates that good cause exists or that consideration of the issue would enable the appellate court to attain the ends of justice. The rationale for this rule is that the trial court, having heard all of the evidence, is best suited to rule on its sufficiency. *Id.* at 234, 348 S.E.2d at 868.

In the present case, the appellant made a motion to strike the evidence at the conclusion of the Commonwealth's case; however, he presented evidence on his own behalf and failed to renew his motion to strike. Further, after the trial was concluded, the appellant did not move to set aside the verdict. *See McGee v. Commonwealth*, 4 Va. App. 317, 321, 357 S.E.2d 738, 739-40 (1987). Accordingly, we find that the issue was not properly preserved for appellate review and that neither good cause nor the ends of justice require that we consider the appellant's sufficiency argument.

In summary, we find that the trial court erred in failing to instruct the jury regarding the effect of a prior felony conviction on the testimony of an accomplice. Therefore, the judgment of conviction is reversed and the case remanded for a new trial.

*Reversed and remanded.*

Coleman, J., and Hodges, J., concurred.